## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MICHAEL J. SCARINGE,

          Petitioner,

  v.               9:19-CV-84
                    (DNH/ATB)

DARWIN LaCLAIR, Superintendent,

          Respondent.

MICHAEL J. SCARINGE, Petitioner pro se
DENNIS A. RAMBAUD, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

  This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

## I. Background

  Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Franklin County Court on August 24, 2012. Petitioner was convicted after a jury trial of Rape, Second Degree; Sexual Abuse, Second Degree, and Endangering the Welfare of a Child. (Petition ("Pet." ¶¶ 2, 5). Plaintiff was sentenced to seven years incarceration and seven years of post-release supervision. (Pet. ¶ 3). The Appellate Division, Third Department affirmed petitioner's conviction on March 17, 2016, and the New York Court of Appeals denied leave to appeal on August 24, 2016. *People v. Scaringe*, 137 A.D.3d 1049 (3d Dep't), *lv. denied*, 28 N.Y.3d 936 (2016).

On September 6, 2017, petitioner filed a motion to vacate his conviction in the Franklin County Court pursuant to N.Y. Crim. Proc. Law § 440.10, which was denied on December 13, 2017. (Pet. ¶ 11; State Court Records ("SR")[1] at 14-18 (Dkt. No. 14-3)).  The Appellate Division, Third Department denied leave to appeal on February 23, 2018. (SR at 19).  The court received this petition for habeas review on January 24, 2019. (Dkt. No. 1).  Petitioner states that he placed the petition in the prison mailing system on January 18, 2019, and the court considers it "filed" as of that date.[2] (Pet. at pp.66-67).

## II.    Grounds Asserted in Habeas Corpus Petition

Petitioner raises the following grounds for relief:

(1)    Petitioner was denied his right to a speedy trial.

(2)    The trial court improperly admitted evidence of prior misconduct.

(3)    The trial court violated petitioner's right to confrontation.

(Pet. ¶ 12, pp.6-65).

## III.    Statute of Limitations

### A.    Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

---

[1] Respondent has numbered the state court records consecutively at the bottom of the page.  The court will use the SR cite when referring to pages of the state court records submitted by respondent.

[2] For purposes of the statute of limitations, the court considers the date that an inmate puts his document into the prison mailing system as the date of filing. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (under the prison mailbox rule, the court deems a pro se prisoner's papers filed on the date that the prisoner delivered the papers to prison officials for transmittal to the court).  Respondent agrees that this is the proper filing date. (Resp. Mem. at 3) (Dkt. No. 14-1).

that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. §

2254

> unless the adjudication . . . (1) resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).  The AEDPA established a one-year statute of limitations for

prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. §

2244(d)(1).  The one year period generally begins to run from the date on which the

state criminal conviction became final by the conclusion of direct review or by the

expiration of the time to seek direct review.  *Id.* § 2244(d)(1)(A).  If a direct appeal is

filed, the judgment of conviction becomes final ninety days after the date that the New

York Court of Appeals denies leave to appeal.[3]  *Williams v. Artuz*, 237 F.3d 147,

150–51 (2d Cir. 2001).

Other dates from which the limitations period may start running are the date on

which an unconstitutional, state-created impediment to filing a habeas petition is

removed; the date on which the constitutional right on which petitioner bases his

habeas application was initially recognized by the Supreme Court, if the right was

---

[3] The ninety-day time period is the time that a petitioner would have to seek direct review of his conviction in the United States Supreme Court and must be counted for purposes of the AEDPA statute of limitations. *Williams v. Artuz*, 237 F.3d at 150 51 (discussing the statutory requirement that the statute of limitations begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review") (citing 28 U.S.C. § 2244(d)(1)(A)).

3

newly recognized **and** made retroactively applicable; or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), and (D). In *Duncan v. Walker*, 533 U.S. 167, 179 (2001), the Supreme Court stated that this statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review."

The AEDPA provides that the one year limitations period will be tolled while a "properly filed" state court post-conviction motion is pending. 28 U.S.C. § 2244(d)(2). The tolling provision only applies if the post-conviction motion was "properly filed" and if it was pending within the one-year limitations period. *Smith v. McGinnis*, 208 F.2d 13, 16 (2d Cir. 2000). Simply filing a post-conviction motion does not re-start the limitations period, and it excludes from the limitations period only the time that the motion remained undecided, including the time during which an appeal from the denial of the motion was taken. *See Bennett v. Artuz*, 199 F.3d 116, 120–21 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000).

Although the AEDPA does not provide that the statute of limitations may be tolled for any reasons other than the pendency of a state post-conviction motion, in "extraordinary circumstances," the court may equitably toll the limitations period. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to warrant equitable tolling, petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The Second Circuit has

also determined that courts should consider a claim of "actual innocence" as a basis for excusing late filing under the AEDPA.  *See Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012).

### B.    Application

Upon initial review of this petition, the court recognized that it was likely that the statute of limitations had expired. (Dkt. No. 5).  Thus, the court issued an order, directing petitioner to file an affidavit explaining why the statute of limitations should not bar this petition. (Dkt. No. 5).  On March 22, 2019, petitioner filed an affidavit in compliance with this court's order. (Dkt. No. 6).  Based on this affidavit, the court ordered a response to the petition. (Dkt. No. 7).  On June 24, 2019, the court granted respondent's motion to limit the initial response the statute of limitations issue. (Dkt. No. 11).  Respondent's papers were filed on July 1, 2019, and petitioner filed a traverse on August 7, 2019. (Dkt. No. 17)

Petitioner concedes that the statute of limitations ran prior to filing his petition for habeas corpus.[4]  Petitioner argues that the court should grant him equitable tolling

---

[4] The court will repeat the calculation for clarity and because the court has noticed a slight discrepancy in the calculations.  The New York Court of Appeals denied leave to appeal on August 24, 2016. (SR at 13).  The statute of limitations began to run 90 days later on November 22, 2016.  The statute ran for 288 days until petitioner filed his section 440.10 motion to vacate on September 6, 2017.  Thus, at the time petitioner filed his section 440.10 motion, he had 77 days remaining on the statute of limitations (365   288   77).  The statute was tolled until the Appellate Division denied petitioner's request for leave to appeal the denial of his section 440.10 motion.  The Appellate Division's order is dated February 23, 2018, but petitioner alleges that he did not receive notice of the denial until March 2, 2018. (SR at 19, Pet. ¶ 11(c)).  Giving petitioner the benefit of the later notice date, the statute of limitations would have started to run again on March 2, 2018 and would have run for another 77 days until Friday, May 18, 2018.  As stated above, petitioner filed this action on January 18, 2019, 245 days (8 months) *after* the statute of limitations expired.

because he has been diligent in attempting to bring this petition and was impeded by conduct and events which were outside of his control. (Dkt. No. 17).

Petitioner strenuously argues that this case is much like *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000) in which the court discussed the bases for a successful request for equitable tolling, including a situation in which the corrections officers intentionally confiscated the habeas **petition** and related documents ***shortly before the statute of limitations expired***. *Id.* at 133-34.  The court stated that a person is prevented from filing for "some" period of time if he is deprived of the sole copy of "that pleading," meaning the petition itself. *Id.*  The court found that intentional confiscation of the habeas petition and supporting documents is "extraordinary per se." *Id.* (citing *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987)).  However, there must be a causal relationship between the "extraordinary circumstances" on which petitioner's claim for equitable tolling is based and the lateness of his filing, a showing that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time, notwithstanding the extraordinary circumstances. *Id.* at 134 (citing *Irwin v. Dep't of Vets. Affairs*, 498 U.S. 89, 96 (1990)).

Petitioner's case is nothing like *Valverde*.  Petitioner describes how the corrections officials interfered with his legal mail and made a mess of transcripts, how his trial attorney was suspended,[5] and how no one would give him the documents that

---

[5] Petitioner includes the Appellate Division, Third Department's decision, suspending petitioner's trial counsel for two years. (Pet.'s Ex. D) (Dkt. No. 17-2).  Petitioner claims that the loss of his attorney's assistance was "severe." (Pet.'s Mem. at 4).  The attorney's misconduct charges were returnable in March of 2017, (prior to petitioner's section 440.10 motion), and counsel was not suspended until July of 2018. (*Id.*)  In the meantime, petitioner had been assigned a different attorney

he requested so that he should be excused from the timely filing of this habeas petition. He even accuses the corrections officials of committing a "crime." However, according to petitioner's exhibits, the alleged egregious interference with his legal mail was in September of *2016*. (Pet. Affirm. ¶ 12 - Dkt. No. 6; Pet. Trav. at 2-3 - Dkt. No. 17)). The statute of limitations expired in May of *2018*. Although petitioner states that this conduct in late 2016 started a "domino effect," he was able to file his section 440.10 motion on September 6, 2017, raising two main issues: (1) newly discovered evidence; and (2) violation of his rights to confrontation and fair trial (a claim that he brings in his federal petition). The County Court's order denying petitioner's section 440.10 motion appears at SR 14-18.

In fact, petitioner's letter to his trial attorney, dated October 20, 2017[6] shows that petitioner was well-aware that he could file his motion to vacate before he had all the documents that he was seeking. (Dkt. No. 17-2 at 10). Petitioner specifically stated that "I've missed using the information I have been waiting for from you for this current motion and hope to receive it from you in time to use it in my reply to their response." (*Id.*) Petitioner was well-aware of the claims he was bringing, and therefore, could have filed his habeas without all the "documentation." In fact, petitioner has brought three claims in this petition, none of which would have required the documentation that petitioner alleges was delayed or was never given to him. In addition, petitioner was

---

on appeal, and petitioner does not specify why his trial attorney's assistance was crucial to the filing of this habeas petition, particularly when he filed his section 440.10 motion in September of 2017.

[6] This letter was written prior to counsel's suspension in late June of 2018.

required to, and did bring his federal claims in New York State Court, and therefore, has litigated each ground prior to raising it in this court.[7]

Petitioner's speedy trial claim would not have required trial transcripts, and to the extent that petitioner was seeking some sort of "court docket," he was told it did not exist. (*See e.g.* Pet.'s Ex. B-1 - Dkt. No. 17-1 at 6; Pet.'s Ex. G-2 - Dkt. No. 17-3 at 3 (letter from Franklin County Clerk dated 5/4/17)). The Appellate Division agreed with petitioner regarding his second claim that the trial court improperly admitted evidence of his prior misconduct. This court is assuming that petitioner is challenging the court's further finding that such error was harmless. This was thoroughly discussed in the Appellate Division's decision, and there is no indication that petitioner was prevented from bringing this claim without unknown trial transcripts. (*See* SR 8-11). Finally, petitioner's confrontation claim was brought in his section 440.10 motion, which was initially denied in December of 2017 (SR 14-18), and the Appellate Division denied leave to appeal on February 23, 2018 (SR 19) (received by petitioner on March 2, 2018). Petitioner then had 77 days[8] until May 11, 2018 to file his habeas corpus action, but did not file until January 18, 2019.

---

[7] 'Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

[8] As stated above, the court is giving petitioner the benefit of the extra days and counting the 77 days from March 2, 2018, the day that he claims he received the order, rather than from the actual date of the Appellate Division's order denying the appeal of petitioner's section 440.10 motion.

There must be a link between the extraordinary circumstances and petitioner's late filing. Petitioner had between March 2, 2018 and May 11, 2018 within which to file his habeas petition. Instead, petitioner waited until January 18, 2019 to file this action. In another effort to shift the blame for his failure to file a timely habeas action, petitioner states that he wrote to the Clerk's Office in the Northern District of New York on March 22, 2018, prior to the expiration of the statute of limitations. In this letter, petitioner provided the Clerk with all the relevant state court dates, indicated his desire to file a federal habeas petition, requested the appropriate forms, and asked that the Clerk calculate the "deadline date for filing the Federal Habeas Corpus [petition]." (Pet.'s Trav. Ex. K) (Dkt. No. 17-3 at 44). Petitioner argues that he received only the forms for filing, but never any guidance on when he should file. Petitioner cannot blame the court for his failure to file the petition prior to the expiration of the statute of limitations. The Clerk of the Court is not authorized to provide legal advice to any party, and when petitioner wrote to the court, he still had until May 11, 2018 within which to file a timely petition.

In *Belot v. Burge*, 490 F.3d 201, 207-208 (2d Cir. 2007), the Second Circuit held that it was not error for the district court to make a discretionary assessment that the petitioner should have started his habeas preparation earlier "and filed an unpolished petition within the allotted time, rather than wait to file until after the deadline had expired." In addition, routine experiences of prison life, including restricted access to the law library and difficulties obtaining materials and transcripts do not qualify as "extraordinary circumstances," warranting equitable tolling. *Cruz v. Noeth*, No. 6:17-

CV-6549, 2018 WL 5809948, at *3 (W.D.N.Y. Nov. 6, 2018) (citations omitted).

Petitioner includes multitudes of letters which he believes show "due diligence" in attempting to file his habeas petition. However, a review of most of the letters shows that they do not even relate to the claims that he makes in his petition. For example, in a letter to the Appellate Division, dated July 9, 2018, petitioner mentions "*Brady*"[9] material. (Pet.'s Ex. C-8) (Dkt. No. 17-1 at 27). However, petitioner does not now, nor has he ever had, a *Brady*[10] claim in his state court papers or in this federal habeas petition.[11] In his traverse, petitioner discusses an incident in which the victim was allegedly being "coached" by the prosecution. However, this claim was not raised in his state court papers, and is not a ground for this habeas petition. Petitioner also requested the victim's medical records. However, there is no indication how these records are relevant to the grounds raised in his habeas corpus petition or in any other

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963). A prosecutor has the duty under *Brady v. Maryland*, to produce material, exculpatory evidence to the defense. *Id.* To prevail on a *Brady* claim, petitioner must show that the prosecution suppressed evidence favorable to him, and that the evidence was material either to guilt or punishment. *Id.* at 87.

[10] In a letter from petitioner's appellate counsel, dated September 14, 2018, after the statute of limitations expired in this action, counsel tells petitioner that there was no *Brady* material, but there was some *Rosario* material. (Pet.'s Ex. I) (Dkt. No. 17-3 at 39). Under New York law, a prosecutor must turn over "*Rosario* material" any "written or recorded statements . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony." N.Y. Crim. Proc. Law § 240.45(1)(a); *People v. Rosario*, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448 (N.Y. 1961).

[11] In fact, petitioner may not bring a claim in federal court that he has not exhausted in the New York State courts. Thus, petitioner's random letters about unrelated issues do not show "due diligence" in pursuing the issues that he ultimately brought in his federal habeas petition, all three of which he could have brought immediately after the County Court denied his section 440.10 motion.

of petitioner's state court proceedings.[12]  Thus, any delay or failure to obtain these "medical records" would not excuse the late filing.

In addition, the letters that petitioner wrote to the court stenographer often did not properly identify the pages of the transcript that petitioner was seeking or referred to items that the stenographer did not possess. (*See e.g.* Pet.'s B-1-B-2;[13] B-7-B-12). Some of the letters were Freedom of Information requests that he was told several times were not the proper vehicle for requesting the information that he sought.  Some of the letters were written prior to petitioner filing his section 440.10 motion, and thus, it is clear that plaintiff's lack of transcripts or other information did not prevent him from filing that motion.[14]  On January 2, 2017, several months before he filed the section 440.10 motion, plaintiff wrote a more detailed letter to the court reporter, indicating that there were details "missing" from the transcript. (Pet.'s Ex. B-5-B-6) (Dkt. No. 17-1 at 10-11).  Petitioner cited specific pages in the transcript, thus, he clearly had some parts of the transcript available to him.[15]

---

[12] In his traverse, petitioner claims that these records should have been provided to trial counsel and were provided to petitioner by his appellate attorney in September of 2018. (Pet.'s Mem. at 5-6). Petitioner claims that this "portion" of the records "verified that the required element needed for this crime [sic] not exist." (*Id.* at 6).  Petitioner does not indicate what this element was, this was never raised in state court, and he has failed to raise it in his petition for habeas relief.  Thus, the allegedly late delivery of the documents to which petitioner refers does not contribute to the existence of "extraordinary circumstances."

[13] (Dkt. No. 17-1 at 6-7).

[14] In one of petitioner's letters, dated December 28, **2016**, before he filed his section 440.10 motion, he stated that he was already "working" on his federal habeas petition. (Dkt. No. 17-3 at 29).

[15] In petitioner's traverse, he complains about the court stenographer's "omission" of instructions and assistance to the jury regarding their "inability" to operate a "machine" in the jury room. (Pet.'s Mem. at 3).  However, the letter that petitioner received from the court stenographer

11

In a letter dated April 8, 2017, prior to his section 440.10 motion, petitioner asked the Clerk of the Harriettstown Court for copies of search warrants executed in his case. (Pet.'s Ex. H-3) (Dkt. No. 17-3 at 34). Petitioner has not shown how search warrants (which apparently did not exist) had anything to do with his current habeas corpus. The statute of limitations was statutorily tolled for the entire period between his filing the section 440.10 motion and the Appellate Division's decision affirming the County Court's denial of that motion.[16]

This court finds that although petitioner filed many letters, he still has failed to show extraordinary circumstances that would justify his failure to file prior to the expiration of the statute of limitations. Finally, petitioner has not shown that he is factually, actually innocent of the crime. Essentially, the issue was whether the jury believed the victim. The Appellate Division noted that, notwithstanding the evidentiary error, there was "overwhelming" other evidence to convict the petitioner. Petitioner has not made any valid argument that he was actually innocent, and thus, he is not entitled to take advantage of the "actual innocence" exception to the running of the statute of limitations.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

---

stated that she had no transcripts of anything that happened in the jury room because jury deliberations are secret and "not a part of the court transcript." (Pet.'s Ex. B-10-B-11).

[16] In his traverse, petitioner complains about actions causing delay in his direct appeal and between 2013 to 2016. (Pet.'s Mem. at 3-4). However, the statute of limitations was tolled during this period of time, and any delay did not adversely affect the petitioner.

**RECOMMENDED**, that a certificate of appealability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 15, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge

13